`IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CR-374-D
No. 5:20-CV-323-D

ANDREW HARGETT, JR.                )
                                   )
                    Petitioner,    )
                                   )
        v.                         )                    **ORDER**
                                   )
UNITED STATES OF AMERICA,          )
                                   )
                    Respondent.    )


On June 19, 2020, Andrew Hargett, Jr. ("Hargett" or "petitioner") moved pro se under 28

U.S.C. § 2255 to vacate, set aside, or correct his 240-month sentence [D.E. 191]. On July 21, 2020,

the court stayed the action pending additional appellate proceedings in United States v. Gary, 954

F.3d 194 (4th Cir. 2020), rev'd, Greer v. United States, 141 S. Ct. 2090 (2021). See [D.E. 197]. On

January 15, 2021, Hargett moved to amend his section 2255 motion [D.E. 200]. On May 4, 2021,

Hargett asked the court to take judicial notice of Rehaif v. United States, 139 S. Ct. 2191 (2019),

under Federal Rule of Evidence 201 [D.E. 201]. On May 12, 2021, Hargett again moved to amend

his section 2255 motion [D.E. 202]. On August 10, 2021, the United States moved to dismiss

Hargett's motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) [D.E.

205] and filed a memorandum in support [D.E. 206]. On September 9, 2021, Hargett responded in

opposition to the government's motion [D.E. 208]. As explained below, the court grants Hargett's

motion to amend, grants the government's motion to dismiss, and dismisses Hargett's section 2255

motion.

On the night of November 22, 2015, law enforcement knew from a confidential source that Hargett was transporting cocaine in a rental car from Atlanta, Georgia to Raleigh, North Carolina. See PSR [D.E. 161] ¶¶ 10–12. After Hargett arrived in Raleigh and while Hargett transferred the cocaine into his car, law enforcement detained Hargett. See id. During the detention, Hargett told officers that he did not have a firearm on his person but later told them there was a firearm in his car. See id. ¶ 12. On November 23, 2015, agents searched Hargett's two cars, his residence, and a storage unit and seized over $140,000 and 2.5 kilograms of cocaine. See id. ¶ 13.

On December 15, 2015, a federal grand jury in the Eastern District of North Carolina indicted Hargett for possession with intent to distribute 500 grams or more of cocaine (count one), possession with intent to distribute a quantity of cocaine and cocaine base crack (count two), possession of a firearm in furtherance of a drug trafficking crime (count three), and possessing a firearm as a convicted felon (count four). See [D.E. 14]. On July 15, 2016, Hargett, through counsel, moved to suppress "any and all evidence, physical and testimonial, obtained or derived from or through a result of . . . [the November 23, 2015] search, seizure, interrogation, arrest, detention, and any fruits of the poisonous tree" flowing from them. [D.E. 42] 1. On March 20, 2017, the court held a suppression hearing. See [D.E. 72, 86]. On March 21, 2017, the court made detailed findings of fact and conclusions of law and denied Hargett's suppression motion. See [D.E. 75, 76]; [D.E. 88].

On July 13, 2018, Hargett, through different counsel, filed a supplemental motion to suppress real-time GPS information used to corroborate law enforcement tips concerning Hargett's location while transporting cocaine from Atlanta to Raleigh. See [D.E. 120]. On August 17, 2018, the court orally denied the supplemental motion to suppress. See [D.E. 141]. On August 20 through August

21, 2018, Hargett was tried by jury. See [D.E. 143, 144]. On August 21, 2018, the jury found Hargett guilty on all four counts. See [D.E. 104, 145].

On November 20, 2018, the court sentenced Hargett to 180 months' concurrent imprisonment on counts one, two, and four, and 60 months' consecutive imprisonment on count three, for a total of 240 months' imprisonment. See [D.E. 165, 169]. Hargett appealed, challenging the court's suppression ruling on the real-time GPS data, the court's admission of opinion testimony given by law enforcement officers at trial, and the court allowing the government to reopen its case to admit additional testimony from Officer Lewis on a cell phone number that a cooperating informant used. See United States v. Hargett, 797 F. App'x 765 (4th Cir.) (per curiam) (unpublished), cert. denied, 141 S. Ct. 423 (2020).

On January 21, 2020, the Fourth Circuit rejected Hargett's arguments and affirmed. See id.; [D.E. 186]. On October 5, 2020, the United States Supreme Court denied certiorari. See United States v. Hargett, 141 S. Ct. 423 (2020); [D.E. 199].

In Hargett's section 2255 motion, Hargett alleges (1) his conviction on count four must be vacated due to Rehaif; (2) his counsel provided ineffective assistance during the suppression hearing by failing to call Officer Anderson to impeach Officer Lewis; and (3) the government violated 18 U.S.C. § 201(c)(2) by offering witness Sammy Rose a bribe in the form of money and freedom. See [D.E. 191] 4–7. In Hargett's first motion to amend his section 2255 motion, Hargett expounds on these three claims, [D.E. 200] 1–5, and adds an ineffective assistance of counsel claim about the motion to suppress real-time cell phone location data. Id. at 5–7. He also adds an ineffective assistance of counsel claim about the issues counsel raised on appeal. Id. at 7–9. In Hargett's second motion to amend, Hargett alleges ineffective assistance of trial counsel by failing to effectively cross examine Sammy Rose and failing to request an informant instruction. See [D.E. 202] 2–4. The

3

government moves to dismiss all claims for failure to state a claim upon which relief can be granted. See [D.E. 205, 206].

## II.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. Fed. R. Civ. Pro. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

## A.

Hargett procedurally defaulted all of his claims other than his ineffective assistance of counsel claims by failing to raise the claims on direct appeal. Thus, the general rule of procedural

4

default bars Hargett from presenting such claims under section 2255. See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Furthermore, Hargett has not plausibly alleged "actual innocence" or "cause and prejudice" resulting from the alleged errors about which he now complains. See Bousley, 523 U.S. at 622–24; Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United States v. Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010); Sanders, 247 F.3d at 144; United States v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999). Thus, any such claims fail.

Alternatively, as for Hargett's Rehaif claim, Hargett stipulated that he was a felon. See [D.E. 133]. Hargett also knew that he twice served more than a year in prison for his felony convictions. See PSR ¶¶ 20, 23. Hargett knew that he was a felon when he possessed the firearm in count four and cannot demonstrate prejudice from the lack of a jury instruction on his knowledge of his felon status. See Greer, 141 S. Ct. at 2096–2100; United States v. Mack, No. 19-4250, 2022 WL 1261753, at *1 (4th Cir. Apr. 28, 2022) (per curiam) (unpublished); United States v. Caldwell, 7 F.4th 191, 213 (4th Cir. 2021). Thus, Hargett's Rehaif claim fails.

Hargett did raise his Fourth Amendment challenge concerning his real-time cell phone location data on direct appeal. See Hargett, 797 F. App'x at 766–67; see [D.E. 200] 5–6. Hargett, however, cannot use section 2255 to recharacterize this claim as an ineffective assistance of counsel claim and relitigate an argument that he lost on direct appeal. See Bousley, 523 U.S. at 622–23; United States v. Frady, 456 U.S. 152, 164–65 (1982); Dyess, 730 F.3d at 360; United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam). Thus, the claim fails.

5

## B.

As for Hargett's ineffective assistance of counsel claims, "[t]he Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including discovery, pretrial motions, trial, sentencing, and appeal. See, e.g., Lee v. United States, 137 S. Ct. 1958, 1964–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984); United States v. Mayhew, 995 F.3d 171, 176 (4th Cir. 2021). Because "[a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, . . . the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Harrington v. Richter, 562 U.S. 86, 105 (2011) (quotation omitted); see Weaver v. Massachusetts, 137 S. Ct. 1899, 1912 (2017); Jackson v. Kelly, 650 F.3d 492, 493 (4th Cir. 2011).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party.

6

See id. at 691–96. A party does so by showing that there is a "reasonable probability" that, but for

the deficiency, "the result of the proceeding would have been different." Id. at 694.

## C.

Hargett claims ineffective assistance of pretrial counsel based on counsel's failure to call

Officer Anderson at his March 20, 2017 suppression hearing. See [D.E. 191] 5; [D.E. 200] 1–3.

Hargett claims that Officer Lewis either did not read him his Miranda rights or did so after Hargett's

admission about the firearm in his car. See [D.E. 200] 2. Hargett claims that Officer "Anderson['s]

report would have proved [Hargett] was in his presence, not Officer Lewis, so there is no way

[Officer Anderson] read [Hargett his] rights." Id.

The record contradicts Hargett's claim. Hargett's own motion to suppress argued that Officer

Lewis advised Hargett of his Miranda rights but that the advice of rights was ineffective because

Hargett was in "a complete state of shock" and was unable to comprehend the nature of his Miranda

rights. [D.E. 42] 18. On March 20, 2017, during the suppression hearing, [O]fficer Lewis testified

several times on direct and cross-examination that he read Hargett his Miranda rights while Hargett

was seated in Officer McLaughlin's patrol vehicle and before Officer Lewis asked Hargett whether

he had a firearm on his person or in his car. See [D.E. 86] 21–24, 71–72. While cross-examining

Officer Lewis about the search warrant for Hargett's North Hills apartment, Hargett's counsel

attempted to authenticate the report of another officer (Officer Anderson) through Officer Lewis,

which Hargett's counsel claimed contained "information that may be contradictory to what [Lewis]

testified to." Id. at 80–81. The United States objected. Id. at 81. After the court sustained the

government's objection, the court asked Hargett's counsel if she could just call the other officer.

Counsel replied, "We can do that[;]" and the court responded, "Okay. Let's do that." Id.

7

During the suppression hearing and after this exchange, Hargett's counsel did not call Officer Anderson to testify or enter Officer Anderson's report into evidence. Rather, Hargett's counsel recalled Officer Lewis and examined him about Officer Anderson's report. See id. at 99–102. Hargett's counsel asked Officer Lewis about Officer Anderson's report, which apparently indicated that Hargett was in Officer Anderson's patrol car when Hargett was being detained. See id. Officer Lewis explained that an officer initially placed Hargett in Officer McLaughlin's patrol car, where Officer Lewis read Hargett his Miranda rights. Id. After receiving his Miranda warning, Hargett made the admission about the gun. Id. at 21–24, 71–72. The officers then moved Hargett to Officer Anderson's patrol vehicle after arresting Hargett and waiting to transport him. See id.; see also id. at 100–02. Hargett's counsel then questioned Officer Lewis on the atmosphere when Officer Lewis advised Hargett of his Miranda rights. See id. at 101–02.

Hargett's counsel argued at the suppression hearing that Hargett was sleep deprived, shocked, and surrounded by law enforcement officers when Officer Lewis advised him of his Miranda rights. Id. at 111–14. Hargett's counsel then argued that because Officer Lewis did not confirm that Hargett understood his Miranda warning, Hargett did not voluntarily, knowingly, and intelligently waive his Miranda rights. See id. at 112–13. The court rejected those arguments. See [D.E. 88] 5, 13–18.

As for Hargett's ineffective assistance of counsel claim about Officer Anderson's report or the failure to call Officer Anderson, Hargett has not provided the court with the report that he claims that Officer Anderson would have authenticated. In any event, Hargett's counsel's tactical decision not to call Officer Anderson but instead to use his report to attempt to impeach Officer Lewis falls "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Moreover, Hargett does not plausibly allege that the report or Officer Anderson would establish that Officer Lewis never Mirandized Hargett or Mirandized him after his admission about the gun. First,

8

Hargett's counsel recalled Officer Lewis during the suppression hearing and questioned him about the statements in Officer Anderson's report. See [D.E. 86] 100–01. Those questions concerned where Hargett was located while being detained. Id. Officer Lewis explained the statement in Officer Anderson's report, which Hargett's counsel did not further contest. See id.

Second, it is implausible that Hargett's counsel, who stated in the motion to suppress and argued at the hearing with Hargett that Officer Lewis's advice of Miranda rights was ineffective because Hargett was too shocked to understand it, would have pursued this strategy if she had evidence that Officer Lewis only gave Hargett his Miranda warning after Hargett's incriminating statement. See [D.E. 42] 18–20; cf. Strickland, 466 U.S. at 691 ("Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant[.]"). Third, the government elicited substantial testimony from Officer Lewis at the hearing about Hargett's mental state at the time that Officer Lewis advised Hargett of his Miranda rights and that Officer Lewis gave the Miranda warning before Hargett made the admission about the firearm. See [D.E. 86] 21–24. Having presided at the suppression hearing and reviewed the entire record, Hargett does not plausibly allege deficient performance or prejudice by counsel's failure to call Officer Anderson to testify or to introduce his report. See Iqbal, 556 U.S. at 677–79; Strickland, 466 U.S. at 694; Giarratano, 521 F.3d at 302.

## D.

Hargett claims his trial counsel was ineffective by failing to ask for a jury instruction concerning the confidential informant, Sammy Rose. See [D.E. 202] 2–3. Hargett also claims his trial counsel should have more effectively cross examined Sammy Rose and Officer Lewis about alleged bribery. Id. at 2. Hargett also alleges that he has direct evidence that Officer Lewis "bribed"

9

Sammy Rose "with money and freedom" and alleges that Officer Lewis's conduct was improper and illegal. See id. at 3.

As for the informant jury instruction, Hargett cannot show either deficient performance or prejudice. As for performance, Hargett's trial counsel requested an informant instruction. See [D.E. 127] 7 (defendant's proposed "Testimony of Government Informer" instruction). As for prejudice, Hargett cannot show prejudice because the court specifically instructed the jury on weighing the credibility of cooperators (i.e., informants) as witnesses and the instruction reflected the current state of the law on such testimony. See [D.E. 174] 169–70.

As for Hargett's claim that trial counsel failed to effectively cross-examine Sammy Rose and Officer Lewis, Hargett fails to state a claim. Trial counsel cross examined these witnesses and appropriately elicited testimony impeaching the credibility of Rose and another cooperator. See [D.E. 173] 208–12, 214–16; [D.E. 174] 83, 90–96. Trial counsel's cross-examination was objectively reasonable and fell "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

As for Hargett's claim that counsel should have moved to suppress Sammy Rose's testimony, or made arguments to the jury about Hargett's theory that Officer Lewis illegally "bribed Sammy Rose, with money and freedom," Hargett fails to state a claim. [D.E. 202] 3. In support of his bribery claim, Hargett cites text messages between Rose and Officer Lewis and a Nash County Sheriff's office form for the "receipt of special investigation funds" signed by Lewis and presumably by Rose. [D.E. 200-4]; see [D.E. 200-3]; [D.E. 200-5]. Hargett claims that this evidence is "direct evidence to prove bribery." [D.E. 202] 3.

The cited evidence does not plausibly suggest that Officer Lewis bribed Sammy Rose. On the contrary, this evidence corroborates Officer Lewis's testimony that he did not arrest Sammy Rose

after the initial cocaine deal because Rose was cooperating, was officially signed up as a cooperator after November 23, 2015, and received a few hundred dollars when law enforcement officially signed him up. See [D.E. 86] 55–56; [D.E. 202-1]; [D.E. 202-2]; cf. [D.E. 174] 71–73, 80–83. Officer Lewis testified at the suppression hearing that he paid Rose because Rose had "paid for a rental vehicle in Atlanta, he was expecting reimbursement from Hargett once they returned[,]" and that "[b]ased on the events that occurred, [Rose] was not paid" by Hargett. [D.E. 86] 55. Moreover, during the trial, the court explained to the jury, that it could consider whether a cooperator was biased due to benefits he may have received, but that "[p]lea agreements and cooperation agreements have been approved as lawful and proper and are expressly provided for in the rules of this court. An alleged accomplice, co-conspirator, or cooperator, including one who has entered into a plea agreement or cooperation agreement with the government, does not thereby become incompetent as a witness." [D.E. 174] 169–70.

Trial counsel does not perform deficiently by failing "to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009); United States v. Pressley, 990 F.3d 383, 388 (4th Cir. 2021). On this record, Hargett has not plausibly alleged that Officer Lewis bribed Rose, much less that counsel was ineffective by failing to raise at trial such a serious and unsupported allegation. Thus, the claim fails.

E.

As for Hargett's ineffective assistance of counsel claims concerning the real-time cell-phone location data, Hargett claims that both trial and appellate counsel were ineffective by failing to use the probable cause standard in their arguments and by failing to make arguments about real-time cell phone location data. See [D.E. 200] 5–6. Specifically, Hargett claims that trial and appellate

11

counsel erroneously argued his suppression motion concerning the cell location data under the reasonable suspicion standard instead of the probable cause standard. See id.

The record defeats Hargett's claim. Both Hargett's trial and appellate counsel argued for the probable cause standard. See [D.E. 120] 4; [D.E. 153] 33–35; Hargett, 797 F. App'x at 766–67 ("Hargett argues that, in light of the Supreme Court's June 2018 decision in Carpenter v. United States, 138 S. Ct. 2206 (2018), real-time cellular site location information ('CSLI') obtained in November 2015 was collected in violation of the Fourth Amendment because officers obtained it pursuant to an authorization order issued under the Stored Communications Act (SCA) and related provisions of North Carolina state law and not a warrant supported by probable cause."). Thus, the claim fails as to performance

As for prejudice, when the Fourth Circuit addressed Hargett's Fourth Amendment challenge to the real-time cell phone location data on direct appeal, the Fourth Circuit held that regardless of whether the real time versus historical distinction altered the analysis, the search was valid under the good faith exception. See Hargett, 797 F. App'x at 767. Thus, Hargett cannot show that there is a "reasonable probability" that, but for the alleged deficiency, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. Accordingly, the claim fails.

Hargett also cites other actions of appellate counsel that he claims were ineffective. These alleged errors include not making the tactical emphasis that Hargett would have preferred, not withdrawing to allow Hargett to proceed pro se for his writ of certiorari, and not sending him a draft of the certiorari petition as quickly as he would have liked. See [D.E. 200] 6–8. The core of these alleged errors concern the arguments that his appellate counsel made about his cell location data suppression claim. See id.

12

As discussed, appellate counsel argued for the probable cause standard. Moreover, Hargett

has not suggested any material differences between the arguments that he claims he wanted his

appellate counsel to make and the arguments appellate counsel actually made. Hargett also has not

shown that his appellate counsel's performance was deficient or that he was prejudiced by the

alleged errors. Thus, the claim fails.

To the extent that Hargett claims his appellate counsel should have raised other issues on

appeal, "[e]ffective assistance of appellate counsel does not require the presentation of all issues on

appeal that may have merit." United States v. Mason, 774 F.3d 824, 828–29 (4th Cir. 2014)

(quotation omitted); see Lawrence v. Branker, 517 F.3d 700, 709 (4th Cir. 2008). Instead, an

attorney provides ineffective assistance "only when ignored issues are clearly stronger than those

presented." Mason, 774 F.3d at 829 (quotation omitted); see Smith v. Robbins, 528 U.S. 259, 288

(2000). Hargett does not cite any arguments that appellate counsel could or should have raised that

would have been "clearly stronger" than the arguments actually raised on his behalf. Mason, 774

F.3d at 829. Thus the claim fails.

## F.

After reviewing the claims presented in Hargett's section 2255 motion, the court finds that

reasonable jurists would not find the court's treatment of Hargett's claims debatable or wrong and

that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies

a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38

(2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## III.

In sum, the court GRANTS petitioner's motions to amend [D.E. 200, 202], GRANTS

respondent's motion to dismiss [D.E. 205], DISMISSES petitioner's motion to vacate, set aside, or

13

correct his sentence under 28 U.S.C. § 2255 [D.E. 191], and DENIES a certificate of appealability.

SO ORDERED. This _16_ day of August, 2022.

JAMES C. DEVER III
United States District Judge